UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| WILLIAM W.[1] ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| *v.* ) | No. 1:22-cv-2430-SEB-MG |
| ) | |
| MARTIN O'MALLEY,[2] Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| *Defendant.* ) | |

## **REPORT AND RECOMMENDATION**

In September 2019, Plaintiff William W. applied for supplemental security income ("SSI"), alleging a disability onset date of October 31, 2017. [Filing No. 7-5 at 2-8.] His application was initially denied on December 28, 2020, and upon reconsideration on June 4, 2021. [Filing No. 7-3 at 39-45; 46-63; 64-69.] The Administrative Law Judge Shelette Veal (the "ALJ") conducted a telephonic hearing on June 2, 2022. [Filing No. 7-2 at 54-82.] The ALJ issued a decision on June 24, 2022, concluding that William W. was not entitled to receive benefits. [Filing No. 7-2 at 34-48.] The Appeals Council denied review on October 25, 2022. [Filing No. 7-2 at 2-4.] On

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

December 20, 2022, William W. timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). [Filing No. 1.]

The Court referred this matter to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 73. [Filing No. 9.] For the following reasons, the undersigned recommends that the Court **REVERSE and REMAND** the decision of the Commissioner.

## I.
### STANDARD OF REVIEW

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, __U.S.__, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id.* In reviewing the ALJ's decision, the Court must uphold the ALJ's finding of fact if the findings are supported by substantial evidence. *Stephens*, 888 F.3d at 327. For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless

'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, he will automatically be found disabled. If a claimant satisfies Steps One and Two, but not Three, then he must satisfy Step Four. Once step Four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

3

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Reversal also is warranted "if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions," regardless of whether the decision is otherwise supported by substantial evidence. *Beardsley,* 758 F.3d at 837 (citations omitted). An ALJ commits an error of law if his decision "fails to comply with the Commissioner's regulations and rulings." *Brown v. Barnhart*, 298 F. Supp. 2d 773, 779 (E.D. Wis. 2004) (citing *Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991)). Reversal is not required, however, if the error is harmless. *See, e.g., Farrell v. Astrue*, 692 F.3d 767, 773 (7th Cir. 2012); *see also Keys v. Barnhart*, 347 F.3d 990, 994–95 (7th Cir. 2003) (citations omitted). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id*. (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

William W. was 40 years old on the date of his alleged onset of disability. [Filing No. 7-3 at 39; 46 64.] He has a limited education and no relevant past work. [Filing No. 7-3 at 69.] William W.'s application alleges that he can no longer work because of anxiety, bipolar disorder,

depression, hypertension, migraines, chronic lower back pain and allergic rhinitis. [Filing No. 7-3 at 39-40; 47; 64.][3]

The ALJ followed the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520(a)(4) and concluded that William W. was not disabled. [Filing No. 7-2 at 26.] Specifically, the ALJ found as follows:

- At Step One, William W. had not engaged in substantial gainful activity[4] since September 20, 2019, the application date. [Filing No. 7-2 at 36.]

- At Step Two, William W. "has the following severe impairments: lumbar stenosis; asthma; obesity and knee pain; depression; anxiety; a trauma-and-stressor-related disorder; and a cannabis use disorder." [Filing No. 7-2 at 37.]

- At Step Three, William W. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in in 20 CFR Part 404, Subpart P, Appendix 1. [Filing No. 7-2 at 37.] The ALJ specifically considered Listings 1.15, 1.16, 1.17, 3.03, 12.04, 12.06, and 12.15. Regarding the paragraph B criteria for Listings 12.04, 12.06 and 12.15, the ALJ found that William W. had "moderate" limitations in two areas: (1) interacting with others and (2) concentrating, persisting, or maintaining pace ("CPP"); "mild" limitations in one area: (1) adapting or managing oneself; and "no limitation" in one are: (1) understanding, remembering, or applying information. [Filing No. 7-2 at 38-39.]

- After Step Three but before Step Four, William W. had the RFC to perform medium work as defined in 20 CFR 416.967(c), except the claimant can perform simple, routine, and repetitive tasks. He must avoid concentrated exposure to fumes, odors, dust, and gases. He can maintain sufficient attention and concentration to perform tasks with reasonable pace and persistence. He can have occasional contact with supervisors and coworkers. He cannot have contact with the public or perform tandem work." [Filing No. 7-2 at 39-40.]

- At Step Four, the ALJ found that transferability of job skills is not an issue because the claimant does not have past relevant work. [Filing No. 7-2 at 47.]

---

[3] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

- At Step Five, relying on the VE's testimony and considering William W.'s age, education, work experience, and RFC, the ALJ determined William W. is capable of making a successful adjustment to other work that exists in significant numbers in the national economy, such as crate liner, industrial cleaner, and hand packager. [Filing No. 7-2 at 47-48.]

## III.
### Discussion

William W. details the following issues on appeal: (1) the ALJ failed to adequately address William W.'s psychological symptoms and their impact on his functioning in the mental RFC; and (2) the ALJ erred in applying SSR 16-3p in assessing William W.'s subjective symptoms. [Filing No. 12 at 4.]

### A. SSR 16-3p Analysis

William W. argues that the ALJ erred by discrediting his statements about the intensity, persistence, and limiting effects of his mental health symptoms in the subjective statement analysis. [Filing No. 12 at 24-27.] He contends that he was consistent in his reporting of agoraphobia and anxiety associated with being around people. [Filing No. 12 at 25.] Further, William W. argues that while the ALJ points out his interest in computer or video games, this hobby is consistent with his reports because it is a solitary task he can do in the comfort of his own home. [Filing No. 12 at 25-26.] Lastly, William W. faults the ALJ for not articulating how his agoraphobia impacts his ability to complete daily tasks and would prevent him from full-time work activities without incapacitation. [Filing No. 12 at 26.] He argues the ALJ similarly failed to acknowledge he requires assistance to complete daily activities from his girlfriend. [Filing No. 12 at 30-32.]

The Commissioner responds that the ALJ appropriately determined that the objective evidence was inconsistent with William W.'s subjective complaints of severity. [Filing No. 14 at 8.] The Commissioner argues that the ALJ reasonably considered the effectiveness of William

6

W.'s treatment: he regularly reported improvement from medication and noted stable or improved depression and anxiety. [Filing No. 14 at 8.] Further, the Commissioner argues that the ALJ considered William W.'s daily activities but did not improperly equate these activities to the ability to perform full-time work. [Filing No. 14 at 8.]

In reply, William W. reiterates his initial argument that the ALJ did not include substantial evidence in his decision, and the ALJ's analysis failed to adequately explain his reasoning for discounting William W.'s subjective statements as compared to other record evidence. [Filing No. 15 at 4-6.] He argues that he consistently reported the same symptoms of anxiety and irritability, all the while also reporting some improvement, which he believes the ALJ did not consider. [Filing No. 15 at 4-6.]

An ALJ's evaluation of subjective symptoms will be upheld unless it is "patently wrong." *Shidler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). The ALJ's subjective symptom evaluation may be patently wrong where the ALJ fails to "build an accurate and logical bridge between the evidence and the result." *Ribuado v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (internal citation and quotation marks omitted). The ALJ must provide specific reasons supporting their evaluation that are supported by the record. *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013).

ALJs use a two-step process to evaluate an individual's subjective symptoms. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). First, an ALJ must determine whether a claimant has "an underlying medically determinable physical or mental impairment that could reasonably be expected to produce an individual's symptoms." *Id.* at *3. If the claimant is found to have such a medically determinable impairment at step one, the ALJ moves to step two where the ALJ must consider all the evidence in the record to evaluate the intensity and persistence of an individual's symptoms and determine "the extent to which an individual's symptoms limit her or her ability to

7

perform work-related activities." *Id*. at *4. When assessing a claimant's symptom testimony, the ALJ considers the factors set forth in 20 C.F.R. § 404.1529(c)(3), *i.e.*, (1) a claimant's daily activities, (2) the location, duration, frequency of the pain or other symptoms, (3) precipitating and aggravating factors, (4) the type, dosage, effectiveness, and side effects of any medication, (5) treatment received for relief of pain or other symptoms, (6) measures the claimant uses to relieve pain or other symptoms, and (7) other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. *Id.* "[A]n ALJ need not discuss every detail related to every factor…." *Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021).

An individual's statements about intensity, persistence, and limiting effects of symptoms may not be disregarded "***solely*** because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." SSR 16-3p, 2017 WL 5180304, at *5 (emphasis added); *see also Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) (holding that an ALJ "cannot disbelieve [a claimant's] testimony solely because it seems in excess of the 'objective' medical testimony"). That is so because "[t]he etiology of pain is not so well understood, or people's pain thresholds so uniform, that the severity of pain experienced by a given individual can be 'read off' from a medical report." *Johnson*, 449 F.3d at 806.

Ultimately, the ALJ must explain the subjective symptom analysis "in such a way that allows [a court] to determine whether [the ALJ] reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (internal quotations omitted). And, "[n]ot all of the ALJ's reasons must be valid," to uphold a subjective symptom finding, "as long as enough of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009).

8

At his hearing, William W. testified that his symptoms include PTSD, problems with being in crowds and other people, inability to stay focused or work around other people, inability to leave his home without having a panic attack, inability to work with supervisors or coworkers unless it was one-on-one, temper issues and storming off, avoiding sharp objects, mental health hospitalizations, therapy and medication, marijuana use, using a prescribed cane, inability to walk far due to knee pain, and problems kneeling and bending. [*See* Filing No. 7-2 at 54-82.]

The ALJ concluded that, although William W.'s impairments could reasonably be expected to cause his alleged symptoms, William W.'s "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reason stated in this decision." [Filing No. 7-2 at 41.]

In support of this finding, the ALJ extensively reviewed the medical evidence and noted inconsistencies with William W.'s stated symptoms. [*See* Filing No. 7-2 at 41-45.] For example, the ALJ noted that "the record does not show mental health symptoms or mental status examination findings that would preclude work activity within the residual functional capacity. Moreover, the record indicates that outpatient mental health treatment, including medication, helped the claimant's mental health symptoms." [Filing No. 7-2 at 41.] While acknowledging the medical evidence showed instances of increased anxiety, agoraphobia, anger, and difficulty with attention, the ALJ also noted outpatient mental health treatments, medication with adjusted dosages, and statements from William W. that his medications were working well or improvements in his symptoms. [*See* Filing No. 7-2 at 42-45.]

The nature and frequency of treatment sought by a claimant is an appropriate consideration. *See, e.g.*, 20 C.F.R. § 416.929(c)(3); *Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021) (affirming ALJ's subjective symptom assessment where record showed "little in the way of actual

9

treatment"). "An ALJ can, by and large, discount a claimant's testimony in light of routine and conservative treatment, so long as the ALJ does not unreasonably minimize the extent of the claimant's treatment, play doctor, or make assumptions about the claimant's failure to seek treatment without asking the claimant about the reasons for noncompliance." *Annette S. v. Saul*, 2021 WL 1946342, at *12 (N.D. Ill. May 14, 2021). While it is true that an ALJ is not required to address each factor, *Gedatus*, 994 F.3d at 903, nor "every single piece of relevant evidence that cuts against [the] decision," *Deborah M.*, 994 F.3d at 788, the ALJ must nonetheless sufficiently explain her subjective finding "in such a way that allows [reviewing courts] to determine whether she reached her decision in a rational manner," *Murphy* 759 F.3d at 816. Here, the ALJ acknowledged William W.'s regularly reported improvement from medications, and the ALJ reasonably considered the treatment provided.

Next, the ALJ found that William W.'s activities of daily living were inconsistent with the alleged severity of his impairments. The ALJ specifically noted William W. reported:

> bathing about once a week and struggling to shower due to sexual assault trauma. He reported that he could only cook things that were microwaved and he neglected his nutrition, chores were difficult, as he typically started them, but did not finish them, he managed money poorly, he required some help with taking medications as prescribed, and his girlfriend was helpful to him in completing several of these daily living tasks. He acknowledged that he had isolated all of his supports (sic) away from him besides his girlfriend. He reported contact with one uncle and a brother and said these relationships were positive. He reported that he enjoyed playing computer games, but he had been struggling with this recently.

[Filing No. 7-2 at 42.] The ALJ noted William W.'s reports of going to the DMV with some stress, that he told a provider that he had been going out more until the pandemic began, and that he was able to leave town to visit his daughter. [Filing No. 7-7 at 89, 202, 208, 210.] The Commissioner contends that the ALJ did not improperly equate these activities to the ability to perform full-time work. [Filing No. 14 at 8.]

10

Plaintiff is correct in noting that a claimant's ability to perform daily activities does not necessarily translate into an ability to work full time. *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). However, such activities are relevant to assessing William W.'s subjective symptoms. *See Pepper*, 712 F.3d at 369. And, the ALJ did not improperly equate these activities to the ability to perform full-time work, and thus her consideration of this factor was reasonable. *See Deborah M.*, 994 F.3d at 791 ("In other words, the ALJ correctly looked at Plaintiff's daily activities to see if they corroborated her pain claims, and she found that they did not. She did not equate Plaintiff's activities to full-time work.").

Thus, the ALJ provided detailed reasons for finding that William W.'s subjective symptoms were not entirely consistent with the record. This specific and detailed explanation enables the Court to trace the ALJ's reasoning. *See Deborah M.*, 994 F.3d at 789 ("So long as an ALJ gives specific reasons supported by the record, we will not overturn his credibility determination unless it is patently wrong.") (quoting *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015)).

**B. Psychological Symptoms and RFC Mental Limitations**

Next, William W. argues that the ALJ failed to adequately address his psychological symptoms and their impact on daily functioning—a similar argument to his subjective symptom objections—but directed towards enhanced limitations in interacting with others, and additional limitations of absenteeism time off-task. [Filing No. 12 at 18.] William W. details his consistent reports of aggression, frequent mood swings, tendencies to shout or snap at others, and consistent issues with agoraphobia, leaving the home, isolating, and panicking around others. [Filing No. 12 at 19-20.] He concludes that the ALJ erred by failing to incorporate adequate limitations to accommodate these psychological symptoms in the mental RFC, and failed to provide adequate

explanation why time off-task and absenteeism were posed in hypotheticals to the VE but not discussed in the RFC analysis. [Filing No. 12 at 19-22.]

In response, the Commissioner points out that the ALJ found only moderate limitations in interacting with others and CPP, thus reasonably accounting for all mental impairment symptoms, to the extent they were supported by the evidence, by limiting him to work that requires only occasional contact with supervisors and coworkers, no contact with the public, and no tandem work. [Filing No. 14 at 3.][5] Further, the Commissioner notes that the ALJ reviewed William W.'s mental health treatments, medications, and his own statements of daily living, arguing that the objective medical evidence supports the ALJ's conclusion that William W. can perform work that does not require him to frequently interact with others. [Filing No. 14 at 4-5.] The Commissioner then details the ALJ's consideration of medical opinion evidence which discussed social functioning. The Commissioner argues that the ALJ found consultative examiner Dr. Rayl's opinion unpersuasive as it was vague and not expressed in functional terms. [Filing No. 14 at 6.] Regarding the medical findings of Dr. Neville, the Commissioner contends that the ALJ found his opinion that William W. was able to respond appropriately to brief supervision and interactions with coworkers, and manage occasional interactions with the public, but not able to sustain intensive, interpersonal contact and would work best alone, in semi-isolation, or as part of a small group, partially persuasive.[6] [Filing No. 15 at 6-7.] Thus, the Commissioner argues, the ALJ

---

[5] The Commissioner notes that William W. does not object to the simple or routine work limitations found by the ALJ.

[6] The ALJ was not persuaded by Dr. Neville's opinion that William W. was moderately limited in the functional areas of understanding, remembering, and applying information, and adapting and managing oneself, and found this portion of his opinion not persuasive. [Filing no. 7-2 at 46.] Further, the Commissioner notes that while the ALJ only adopted most of Dr. Neville's opinion but declined to adopt the simple task restriction, this is harmless as any jobs identified by the VE were unskilled and would not be affected by this additional limitation. [Filing No. 14 at 7.]

fulfilled all requirements regarding William W.'s mental limitations and properly evaluating them in the RFC analysis.

In reply, William W. acknowledges that he did not expressly argue against the ALJ's consideration of any medical opinion evidence. But he suggests that if the ALJ found Dr. Rayl's consultative opinion vague and lacking a function-by-function opinion, this criticism is contrary to law where a medical source need not provide a function-by-function analysis and the final responsibility of crafting an RFC is reserved to the Commissioner. [Filing No. 15 at 3-4.] Thus, William W. contends, if the ALJ believed Dr. Rayl's opinion was deficient, the ALJ should have sought clarification before discounting it, and Dr. Rayl's failure to provide a function-by-function analysis does not support the ALJ's decision to disregard her opinion. [Filing No. 15 at 4.]

An RFC represents "the maximum a person can do—despite his limitations—on a regular and continuing basis, which means roughly eight hours a day for five days a week." *Pepper*, 712 F.3d at 362 (internal quotation marks omitted). In determining an individual's RFC, "the ALJ *must* evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano*, 556 F.3d at 563 (emphasis added). An ALJ must provide more than a "cursory analysis" for rejecting limitations alleged by a claimant. *Id.* That is so because the ALJ must build an "accurate and logical bridge" between the evidence and the result. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

Here, in the Step Three analysis, the ALJ found that William W. had "moderate" limitations in two areas: (1) interacting with others and (2) concentrating, persisting, or maintaining pace. [Filing No. 7-2 at 38-39.] The ALJ's subsequent RFC, in pertinent part, limited William W. to "simple, routine, and repetitive tasks;" "[h]e can maintain sufficient attention and concentration to perform tasks with reasonable pace and persistence;" "h[e] can have occasional contact with

13

supervisors and coworkers;" and "[h]e cannot have contact with the public or perform tandem work." [*See* Filing No. 7-2 at 39-40.]

During the hearing, the ALJ posed a hypothetical question to the VE using language nearly identical to the eventual mental RFC finding. [*See* Filing No. 7-2 at 79.] The ALJ adopted the following hypothetical, in relevant part for the VE's consideration—"perform simple, routine, repetitive tasks. And can maintain sufficient attention and concentration to perform those tasks with reasonable pace and persistence. Could have occasional contact with supervisors and coworkers. No contact with the public and no tangent work." [Filing No. 7-2 at 79.] The VE concluded that jobs existed in the national economy with these CPP and interaction restrictions in combination of William W.'s other restrictions. [Filing No. 7-2 at 79.] The ALJ then added the additional limitations that the individual "would be off task 20% of the workday," or "absent three days per month." [Filing No. 7-2 at 80.] The VE testified that no jobs would be available with either additional limitation. [Filing No. 7-2 at 80.] Following the ALJ's questioning, William W.'s counsel questioned the VE with an additional limitation of an "extra break of 15 minutes." [Filing No. 7-2 at 81.] The VE testified that no jobs would be available with this additional limitation. [Filing No. 7-2 at 81.]

The Commissioner's reasoning that William W.'s RFC argument fails because he has not identified a medical opinion opining that he has greater limitations than those adopted by the ALJ has some appeal. First, the ALJ found the state agency examiners during the May 2020 disability determination evaluation unpersuasive, as they had insufficient evidence to support their determinations. Next, the ALJ evaluated state agency examiner Dr. Neville's opinion that William W. had moderate limitations with respect to all four functional areas. [*See* Filing No. 7-3 54.] Dr. Neville narratively opined that:

14

> The totality of evidence in file suggests that the claimant is able to: understand, carry out and remember simple instructions: able to make judgments commensurate with functions of simple, repetitive tasks; able to respond appropriately to brief supervision and interaction with coworkers and work situations; able to deal with changes in routine work settings.
>
> It appears that claimant would be able to manage occasional contact with the public but sustained, intensive, interpersonal contact would be precluded. The claimant would appear to work best alone, in semi-isolation from others or as part of a small group. Totality of the MER suggests the claimant seems to be able to maintain at least a minimal level of relationship with others.

[Filing No. 7-3 at 59.] The ALJ found this opinion partially persuasive, but that William W. has no limitations in understanding, remember or applying information, and mild limitations in adapting or managing oneself, and that the limitations in the RFC are more consistent with the record showing outpatient treatment, intact memory, and that he could travel out of town or go to the DMV. [Filing No. 7-2 at 46-47.] Lastly, regarding Dr. Rayl's opinion, she stated that William W.'s "symptoms are impacting his social and occupational functioning. He will require ongoing monitoring and treatment of these symptoms." [Filing No. 7-7 at 123.] The ALJ found this opinion not persuasive, and while the ALJ acknowledged Dr. Rayl's detailed examination findings and that the record supports some mental limitations, she found the opinion vague and lacked a function-by-function opinion of his capabilities in a work setting. [Filing no. 7-2 at 46.]

    The undersigned finds that William W.'s argument of additional social interaction limitations fails. The objective evidence does not appear to indicate greater limitations that those found by the ALJ, and the ALJ has provided an appropriate and logical analysis of the same, along with evaluating the VE's opinions and their impact on functioning.

    William W. then argues the ALJ did not explain why the hypothetical of time off-task and absence limitations posed to the VE was inapplicable under the record when he provided credible evidence of consistent anxiety and agoraphobic symptoms.

Certainly, there is ample self-reports and medical reports documenting anxiety, panic disorder, and agoraphobia from leaving the house, being in crowds and around other people. [*See* Filing No. 7-2 at 62-65 (William W. testified that he "can't be around a lot of people," "I get on a bus, I have an anxiety attack," he could not go to the BMV because of the amount of people in the building, and at interviews for jobs he notes his inability to work with or be around people); Filing No. 7-2 at 73-74 (William W. testified that he and his girlfriend do not go to the grocery store and she orders everything, he has panic attacks depending on how many people are around and who he has contact with, and he will wait for an elevator if there are too many people); Filing No. 7-7 at 62-97 (treatment notes at Adult & Child Health noted an onset date November 25, 2019 for panic disorder with agoraphobia—and reports of panic attacks and being unable to stand crowds—throughout treatment visits, noting severe anxiety and reports experiencing panic attacks when in crowded places, avoiding public transportation, crowded places, going to the store, standing in line, and leaving the home due to panic attacks and agoraphobia, and many independent living skills are deferred to William W.'s girlfriend who assist with these tasks); Filing No. 7-7 at 134-227 (treatment notes at Adult & Child Health noting mild improvement from medications with depression and anxiety, consistent reports of getting nervous around large groups of people and continued anxiety, and anxious affect).] Dr. Neville similarly found in a checkbox limitation that William W. would be "moderately limited" by his psychologically based symptoms in terms of completing a normal workday or workweek without interruptions and without an unreasonable number and length of rest periods (though Dr. Neville did not include off-task or absenteeism limitations in his narrative opinion). [*See* Filing No. 7-3 at 57-58.]

The Commissioner contends that no evidence in the record of greater restrictions than the ALJ stated in RFC, the ALJ's questioning to the VE included all limitations in the RFC assessment,

16

and the ALJ has no requirement to explain why she rejected a hypothetical that was not supported by the record. The ALJ, however, seemed to recognize William W.'s challenges with respect to staying on task and absenteeism when formulating an additional hypothetical for the VE and incorporating the additional limitations of a person being off-task 20% of the time and absent three days per month. The VE opined that a person so limited would lack the functional capacity to sustain any employment. [Filing No. 7-2 at 80.] Further, it appears the ALJ devoted its analysis to Dr. Neville's narrative opinion but ignored his moderate checkbox limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. [*See* Filing No. 7-2 at 46-47; Filing No. 7-3 at 57-58.] Even if a medical source provides a narrative explanation and the ALJ relies on that explanation, the ALJ must still include other checkbox limitations in the residual functional capacity and hypotheticals. *See DeCamp v. Berryhill,* 916 F.3d 671, 676 (7th Cir. 2019).

      While the ALJ may have accounted for Dr. Neville's limitation as a basis for formulating the absenteeism and off-task hypotheticals to the VE, and while the undersigned makes clear that an ALJ is not bound to any hypothetical it poses, it appears the ALJ considered the issue of off-task time and absenteeism but failed to provide analysis of whether William W. was limited by either in the RFC analysis. This is error, as there is no logical bridge to follow to any conclusion about off-task time or absences. *See Justin H. v. Berryhill*, 2019 WL 2417423, at *6-7 (N.D. Ind. June 7, 2019). *See also Hawist v. Berryhill*, 2018 WL 6399094 *4 (N.D. Ill. Dec. 6, 2018) ("this Court believes that the ALJ did, in fact, consider Hawist's propensity for off-task behavior, but failed to provide any analysis in his decision whatsoever for his reasons for not including this evidence in Hawist's RFC. This lack of an 'accurate and logical bridge between the evidence and

his conclusion; warrants remand'"); *Diaz v. Berryhill*, 2018 WL 4627218 *8 (N.D. Ind. Sept. 27, 2018) (remanding where "the ALJ considered the issue of off-task time, but then she failed to provide any analysis of whether, for example, the claimant was limited by any off-task allowances and, if so, for how long").

It may very well be that the ALJ's social interaction limitations—occasional contact with supervisors and coworkers; cannot have contact with the public or perform tandem work—were intended to account for a portion of William W.'s anxiety-based *and* agoraphobia-based CPP limitations. And the ALJ may also have decided that neither time off-task or absenteeism were warranted based on the record at hand, but this Court is unable to ascertain whether the ALJ adequately considered these two potential RFC limitations. *Lothridge*, 984 F.3d at 1234 (citing *Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019). But considering William W.'s severe anxiety, the record of mental health symptoms, and Dr. Neville's opinion, this is not an insignificant issue for the ALJ to have raised in a hypothetical and then discarded in the RFC analysis. Lastly, while the medical record could conceivably support off-task or absence limitations within the RFC, it is not for the Court to say whether it does. If, on remand, the ALJ finds it still does not, she must fill in the gaps in her logic she failed to detail in her June 24, 2022 decision.

Therefore, the undersigned **RECOMMENDS** that the Court **REVERSE and REMAND** on this basis.

### C. Dr. Rayl's Opinion

To have a complete picture of the ALJ's RFC analysis, the undersigned feels like it must acknowledge Dr. Rayl's opinion and treatment. As noted above, William W. notes that he did not expressly object to the treatment of any medical opinion in his complaint or briefing. And the

medical opinions, upon initial review, appear to not provide William W. with any further functional limitations than those opined by the ALJ. However, if fully credited, Dr. Rayl's opinion—that his symptoms of depression, anxiety, posttraumatic stress, irritability, and marijuana use are impacting his social and occupational functioning—suggests that William W. *could* require a more restrictive RFC.

An ALJ may not discount the opinion of an examining physician without a valid explanation, *see Beardsley*, 758 F.3d at 839, and here the ALJ failed to support her decision. Further, the agency's regulations instruct that the medical opinion of an examining source, such as Dr. Rayl, generally receive more weight than the medical opinion of a non-examining source, such as Dr. Neville. *See* 20 C.F.R. § 416.927(c)(1). A conclusion to the contrary requires a "good explanation for this unusual step," *Beardsley*, 758 F.3d at 839, which the ALJ did not supply here.

The ALJ did not substantiate her finding, and Dr. Rayl's opinion *was* sufficiently specific. The six-page narrative report recounted William W.'s performance on her mental-status exam and included her behavior observations; included observations that his hygiene appeared poor, his mood was "ok," that he was polite to the examiner and cooperative with questions, but he does not spend time with friends and does not like to socialize, his endorsed symptoms of depression and anxiety are consistent with Major Depressive Disorder and Generalized Anxiety Disorder with panic attacks, his irritability is consistent with PTSD, and his endorsed symptoms of depression, anxiety, posttraumatic stress, irritability and marijuana use impact his social and occupational functioning. [Filing No. 7-7 at 121-123.]

The undersigned makes no judgment whether Dr. Rayl's opinion with clarification should ultimately alter the ALJ's ultimate RFC, but in any case, if the ALJ believed that Dr. Rayl's opinion

was deficient, the ALJ should have sought additional clarification from Dr. Powell before discounting it outright. *See* 20 C.F.R. § 416.919p(b) ("If the report is inadequate or incomplete, we *will* contact the medical source who performed the consultative examination, give an explanation of our evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report.") (emphasis added).

Because the undersigned is recommending remand on a separate issue, should the ALJ once again find Dr. Rayl's opinion vague, the ALJ should take care to observe the requirements of 20 C.F.R. § 416.919p(b) and request any additional information so it may make a proper decision on the weight of Dr. Rayl's opinion.

## IV.
### CONCLUSION

For the reasons detailed above, the undersigned recommends the Court **REVERSE and REMAND** the ALJ's decision denying William W. benefits.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Failure to file timely objections within fourteen (14) days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Date: 2/12/2024

*[signature]*
Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record.**